UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                              Chapter 11

19 Highline Development LLC, et. al                 Case No. 18-12714 (MEW)
                                                    Case No. 19-11068 (MEW)

                                    Debtors.        (Jointly Administered)

------------------------------------------------------------------x

### COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Robert K. Dakis
Morrison Cohen LLP
909 Third Ave. 27th Floor
New York, New York 10022
Telephone:  (212) 735-8600

Counsel to Churchill Real Estate Fund LP, Specialty
Credit Holdings, LLC, and Silver Point Select
Opportunities Fund A, L.P.

Dated:  October 31, 2019

# TABLE OF CONTENTS

**Page**

Article I. DEFINED TERMS AND RULES OF INTERPRETATION ............................................................. 3
    A.    Defined Terms ..................................................................................................................... 3
    B.    Rules of Interpretation ...................................................................................................... 10

Article II. BACKGROUND AND DISCLOSURES ................................................................................... 11

Article III. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND UNITED STATES
    TRUSTEE STATUTORY FEES ............................................................................................ 14
    A.    Administrative Claims ...................................................................................................... 14
    B.    Priority Tax Claims ........................................................................................................... 15
    C.    United States Trustee Statutory Fees ................................................................................ 15

Article IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........................... 16
    A.    Classification of Claims and Interests ............................................................................. 16
    B.    Treatment of Claims and Interests ................................................................................... 16
    C.    Special Provision Governing Unimpaired Claims ........................................................... 18
    D.    Acceptance or Rejection of the Plan ................................................................................ 18
    E.    Nonconsensual Confirmation .......................................................................................... 18
    F.    Subordinated Claims ........................................................................................................ 19
    G.    Elimination of Vacant Classes ......................................................................................... 19

Article V. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................. 19
    A.    Sources for Plan Distributions and Transfers of Funds Among Debtors ......................... 19
    B.    Restructuring Transactions ............................................................................................... 19
    C.    Litigation Trust ................................................................................................................. 21
    D.    Corporate Existence .......................................................................................................... 22
    E.    Vesting of Assets in the Reorganized Debtors ................................................................ 22
    F.    Cancellation of Agreements and Equity Interests ............................................................ 22
    G.    Approval New Facility Documentation ........................................................................... 23
    H.    Reorganized Debtors' Equity Interests ............................................................................ 23
    I.    Exemption from Registration Requirements .................................................................... 24
    J.    Organizational Documents ............................................................................................... 24
    K.    Exemption from Certain Transfer Taxes and Recording Fees ......................................... 24
    L.    Directors and Officers of the Reorganized Debtors ........................................................ 24
    M.    Preservation of Rights of Action ..................................................................................... 25
    N.    Corporate Action .............................................................................................................. 25
    O.    Effectuating Documents; Further Transactions ............................................................... 25

Article VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; EMPLOYEE
    BENEFITS; AND INSURANCE POLICIES ......................................................................... 26
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..................... 26
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .................... 26
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases .................... 27
    D.    Contracts and Leases Entered into After the Petition Date .............................................. 27
    E.    Reservation of Rights ....................................................................................................... 27

Article VII. PROVISIONS GOVERNING DISTRIBUTIONS ................................................................ 28
    A.    Distribution on Account of Claims and Interests Allowed as of the Effective Date ........ 28
    B.    Distributions on Account of Claims and Interests Allowed After the Effective Date ...... 28
    C.    Timing and Calculation of Amounts to Be Distributed ................................................... 28
    D.    Delivery of Distributions .................................................................................................. 29

|  | E. | Compliance with Tax Requirements/Allocations | 30 |
|  | F. | Surrender of Canceled Instruments or Securities | 31 |
|  | G. | Claims Paid or Payable by Third Parties. | 31 |

**Article VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS** ... 31

|  | A. | Allowance of Claims and Interests | 31 |
|  | B. | Prosecution of Objections to Claims | 31 |
|  | C. | Estimation of Claims and Interests | 32 |
|  | D. | Adjustment to Claims and Interests Without Objection | 32 |
|  | E. | Time to File Objections to Claims | 32 |
|  | F. | Disallowance of Certain Claims | 32 |
|  | G. | Amendments to Proofs of Claim | 32 |

**Article IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ... 33

|  | A. | Conditions Precedent to the Effective Date | 33 |
|  | B. | Waiver of Conditions | 33 |
|  | C. | Effect of Non-Occurrence of Conditions to the Effective Date | 33 |
|  | D. | Substantial Consummation | 33 |

**Article X.    REQUIREMENTS FOR CONFIRMATION** ... 33

|  | A. | Best Interest Test. | 34 |
|  | B. | Liquidation Analysis. | 34 |
|  | C. | Feasibility. | 34 |

**Article XI. DISCHARGE, INJUNCTION AND RELATED PROVISIONS** ... 34

|  | A. | Discharge of Claims and Termination of Equity Interests; Equity Interests, and Controversies. | 34 |
|  | B. | Injunction | 35 |
|  | C. | Release of Liens | 35 |

**Article XII. RETENTION OF JURISDICTION** ... 35

**Article XIII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN** ... 37

|  | A. | Modification of Plan | 37 |
|  | B. | Effect of Confirmation on Modifications | 37 |
|  | C. | Revocation of Plan | 38 |

**Article XIV. MISCELLANEOUS PROVISIONS** ... 38

|  | A. | Immediate Binding Effect | 38 |
|  | B. | Additional Documents | 38 |
|  | C. | Payment of Statutory Fees | 38 |
|  | D. | Reservation of Rights | 38 |
|  | E. | Successors and Assigns | 38 |
|  | F. | Service of Documents | 39 |
|  | G. | Term of Injunctions or Stays | 39 |
|  | H. | Entire Agreement | 39 |
|  | I. | Governing Law | 39 |
|  | J. | Exhibits | 40 |
|  | K. | Nonseverability of Plan Provisions upon Confirmation | 40 |
|  | L. | Closing of Chapter 11 Cases | 40 |
|  | M. | Conflicts | 40 |
|  | N. | Section 1125(e) Good Faith Compliance | 40 |
|  | O. | Further Assurances | 40 |

## PLAN SPONSORS' PLAN OF
## REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Churchill Real Estate Fund LP ("Churchill"), Specialty Credit Holdings, LLC ("Specialty Credit"), and Silver Point Select Opportunities Fund A, L.P. ("SPSO Fund" and together with Churchill and Specialty Lender, "Lenders"), propose this joint plan of reorganization (the "Plan") for the resolution of the outstanding claims against, and equity interests in 19 Highline Development LLC ("Development") and Project 19 Highline LLC ("PropCo" and, together with Development, the "Debtors"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the Restructuring Transactions on the Effective Date of the Plan. The Lenders and each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article IV of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE LENDERS' AND DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, EACH HOLDER OF A CLAIM OR EQUITY INTEREST THAT IS ENTITLED TO VOTE SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

## Article I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.      *"Accrued Professional Compensation"* means, at any date, all accrued fees and reimbursable expenses (including success fees) for services rendered by all Retained Professionals in the Chapter 11 Cases through and including such date, to the extent that such fees and expenses have not been previously paid and regardless of whether a fee application has been filed for such fees and expenses.  To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.      *Administrative Claim"* means a Claim (other than DIP Claims) for costs and expenses of administration under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court); (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911–1930.

3.      *"Administrative Claims Bar Date"* means the first Business Day that is 30th day after the Effective Date.

4.      *"Affiliate"* means an affiliate as defined in section 101(2) of the Bankruptcy Code.

5.      *"Allowed"* means, with respect to any Claim or Interest, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, with the consent of the Lenders, or the Reorganized Debtors, (c) any Claim or Interest as to which the liability of the Debtors or Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim or Interest expressly allowed hereunder; *provided* that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

6.      *"Acquisition Loan"* means that loan in the principal amount of $23,364,358.18, made pursuant to the Acquisition Loan Agreement.

7.      *"Acquisition Loan Agreement"* means that certain Acquisition Loan and Security Agreement, dated as of February 20, 2018 by and between PropCo and Lenders.

8.      *"Assumed Executory Contract/Unexpired Lease List"* means the list (as may be amended) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the Plan, as determined by the Debtors and the Lenders.

9.      *"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections

502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

10.     "*Ballot*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

11.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

12.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Cases.

13.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

14.     "*Building Loan*" means a loan in the maximum principal amount of up to $11,870,641.82 (to be funded upon the terms and subject to the conditions of that certain Building Loan Agreement).

15.     "*Building Loan Agreement*" means that certain Building Loan and Security Agreement, dated as of February 20, 2018, by and between PropCo and Lenders.

16.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

17.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

18.     "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. For the avoidance of doubt, "Causes of Action" includes: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

19.     "*Certificate of Formation*" means the certificates of formation of each Reorganized Debtor, substantially in the form included in the Plan Supplement.

20.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

21.     "*Claim*" means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against any of the Debtors.

22.     "*Claims Bar Date*" means, as applicable, the bar date for Governmental Units, the general bar date, the amended schedules bar date, and the contract rejection damages bar date, each as established pursuant to an order of this Court, and the Administrative Claims Bar Date established by the Plan.

23.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) with respect to (i) Administrative Claims, 150 days after the Administrative Claims Bar Date, or (ii) all other Claims, 180 days after the Effective Date; *provided* that the Debtors may seek a further extension and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

4

24.    "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

25.    "*Class*" means a category of Claims or Interests as set forth in Article IV of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

26.    "Class A Holders" means the Class A Preferred Shareholders in Development.

27.    "Class B Holders" means the Class B Common Shareholders in Development.

28.    "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

29.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

30.    "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

31.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32.    "*Consummation*" means the occurrence of the Effective Date.

33.    "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

34.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, (as amended, supplemented, or modified from time to time) that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

35.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement.

36.    "*Disputed*" means, with respect to any Claim or Interest, except as otherwise provided herein, a Claim or Interest that is not yet Allowed.

37.    "*Disputed Claims Reserve*" means an appropriate reserve, to be determined by the Reorganized Debtors, unless otherwise ordered by the Bankruptcy Court, for distribution on account of Disputed Claims that are subsequently Allowed after the Effective Date.

38.    "*Distribution Agent*" means the Debtors or any Entity or Entities chosen by the Debtors or Reorganized Debtors to make or to facilitate distributions required by the Plan.

39.    "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions under the Plan, which date shall be the Confirmation Date.

40.    "*Effective Date*" means the fourteenth (14) day after the Confirmation Date that is a Business Day on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX.A of this Plan have been (i) satisfied or (ii) waived pursuant to Article IX.A of this Plan.

41.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

42.    "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date.

43.    "*Estate*" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

44.    "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

45.    "*Existing Loans*" means the Acquisition Loan, the Building Loan, the Mezzanine Loan, and the Project Loan.

46.    "*Existing Loan Documents*" means the Acquisition Loan Agreement, the Building Loan Agreement, the Mezzanine Loan Agreement, and the Project Loan Agreement.

47.    "*Final Order*" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Chapter 11 Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed and as to which (x) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, reargument or rehearing shall then be pending or (y) if an appeal, writ of certiorari, new trial, stay, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; *provided* that no order shall fail to be a Final Order solely due to the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Rule 9024 of the Bankruptcy Rules may be filed with respect to such order.

48.    "*General Administrative Claim*" means any Administrative Claim, including Cure Costs, other than a Professional Fee Claim.

49.    "*General Unsecured Claims*" means any unsecured Claim (other than an Administrative Claim, a Priority Tax Claim, or an Other Priority Claim) against one or more of the Debtors.

50.    "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

51.    "*Holder*" means an Entity holding a Claim or Interest.

52.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

53.    "*Initial Distribution Date*" means the date that is on or as soon as practicable after the Effective Date when distributions under the Plan shall commence for each Class entitled to receive distributions.

54.    "*Insider*" means an "insider" as defined in section 101(31) of the Bankruptcy Code.

55.    "*Investors*" means the Class A Holders and the Class B Holders.

56.    "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code.

57.    "*Litigation Trust*" means a trust created pursuant to the Plan for the benefit of the Investors that is to be formed and governed by the terms of the Plan and the Litigation Trust Agreement.

58.    *"Litigation Trust Agreement"* means that certain Litigation Trust Agreement that is to govern the Litigation Trust, in substantially the form of such document included in the Plan Supplement, pursuant to which, among other things, the Retained Causes of Action shall be conveyed to the Litigation Trust.

59.    *"Litigation Trustee"* means the individual or entity which shall be selected by a majority of the Class A Holders in Development and which shall be empowered to pursue and, without limitation, to manage the Litigation Trust pursuant to the terms of the Plan and the Litigation Trust Agreement.

60.    *"Litigation Trustee Advance"* means the sum of two hundred fifty thousand dollars ($250,000) that will be advanced by Lenders to the Litigation Trust for the purposes of investigating and prosecuting the Retained Causes of Action.

61.    *"Maturity Date"* means the date upon which the New Facility matures as set forth in the New Facility Documents.

62.    *"Mezzanine Loan"* means that certain mezzanine loan in the maximum principal amount of up to $4,000,000.00, made pursuant to the Mezzanine Loan Agreement.

63.    *"Mezzanine Loan Agreement"* means that certain Mezzanine Loan and Security Agreement, dated as of February 20, 2018, by and between Development and the Lenders.

64.    *"New Board"* means the initial Sole Manager of Reorganized Debtor as of the Effective Date.

65.    *"New Facility"* means the New Mortgage Loan, New Mezzanine Loan, and New Project Loan, each as issued pursuant to the Plan.

66.    *"New Facility Documentation"* means the New Facility Documents and any and all other documents, agreements and instruments executed by any Reorganized Debtors and any other Person, all as may be required by Lenders and supplemented, amended, restated and/or renewed, from time to time.

67.    *"New Facility Documents"* means the New Mortgage Loan Agreement, New Mezzanine Loan Agreement and New Project Loan Agreement, each as issued pursuant to the Plan, together with any and all other ancillary documents, instruments and agreements executed in connection with the foregoing by and between the Reorganized Debtors and Lenders.

68.    *"New Investments"* means (i) the loans provided for by the New Facility Documentation which may be secured by liens on and security interests in all or substantially all of the assets of the Reorganized Debtors, and/or (ii) issuance of common or preferred equity interests in the Reorganized Debtors.

69.    *"New Mezzanine Loan"* means a loan in the amount of $4,267,911.11, made pursuant to the New Mezzanine Loan Agreement.

70.    *"New Mezzanine Loan Agreement"* means that certain Mezzanine Loan and Security Agreement, dated as of the Effective Date, by and between Reorganized HoldCo and Lenders.

71.    *"New Mortgage Loan"* means a loan in the amount of $33,856,237.75 made pursuant to the New Mortgage Loan Agreement.

72.    *"New Mortgage Loan Agreement"* means that certain Mortgage Loan and Security Agreement, dated as of the Effective Date, by and between Reorganized PropCo and Lenders.

73.    *"New Organizational Documents"* means such certificates or articles of incorporation, bylaws, or other applicable formation documents of each of the Reorganized Debtors, as applicable, the forms of which shall be included in the Plan Supplement, including the Certificate of Formation, and the Operating Agreement.

74.    *"New Project Loan"* means the loan in the maximum principal amount of up to $20,000,000 to be funded upon the terms and subject to the conditions of that certain New Project Loan Agreement.

75.     "*New Project Loan Agreement*" means the New Project Loan and Security Agreement, dated as of the Effective Date, by and between Reorganized ProCo, the Lenders and those investors that become lenders in accordance with the terms thereof.

76.     "*New Class A Units*" means the new Class A common units in Reorganized HoldCo to be authorized, issued, or reserved to the Class 3 holders consisting of Prepetition Term Loan Secured Claims on the Effective Date pursuant to the Plan.

77.     "*New Class B Units*" means the new Class B common units in Reorganized HoldCo to be authorized, issued, or reserved to the Class 5 holders consisting of the Class A Holders in Development on the Effective Date pursuant to the Plan.

78.     "*New Units*" means the New Class A Units and the New Class B Units.

79.     "*Operating Agreement*" means the limited liability company agreement of Reorganized HoldCo, substantially in the form included in the Plan Supplement.

80.     "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Administrative Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

81.     "*Other Secured Claim*" means any Secured Claim against the Debtors other than the Existing Loans. For the avoidance of doubt, a Secured Tax Claim constitutes an Other Secured Claim.

82.     "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the Initial Distribution Date, and, thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the immediately preceding Periodic Distribution Date.

83.     "*Petition Date*" means September 7, 2018 for 19 Highline Development LLC and April 5, 2019 for Project 19 Highline LLC.

84.     "*Plan*" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

85.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to be filed on the Plan Supplement Filing Date, (as amended, supplemented, or modified from time to time) in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, including any and all documentation necessary to effectuate the transactions contemplated by the Plan.

86.     "*Plan Supplement Filing Date*" means the date by which the Plan Supplement (together with any exhibits or schedules to the Plan that are not filed with the Plain) shall be filed with the Clerk of the Bankruptcy Court, which date shall be no later than five (5) calendar days before the deadline for voting to accept or reject the Plan.

87.     "*Priority Tax Claim*" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

88.     "*Pro Rata Share*" means with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

89.     "*Professional Fee Claim*" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

90.    "*Project Loan*" means the loan in the maximum principal amount of up to $765,000.00 to be funded upon the terms and subject to the conditions of that certain Project Loan Agreement.

91.    "*Project Loan Agreement*" means the Project Loan and Security Agreement, dated as of February 20, 2018, by and between Mortgage Borrower and Lenders.

92.     "*Proof of Claim*" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

93.    "*Property*" means that certain parcel of real property located at 435-437 West 19th Street, New York, New York.

94.    "*Project*" means the 20-unit luxury condominium building being designed and built at the Property.

95.    "*Reinstated*" means, with respect to Claims and Interests, that the Claim or Interest which shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

96.    "*Rejected Executory Contract/Unexpired Lease List*" means a list (as may be amended) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the Plan, as determined by the Debtors.

97.    "*Reorganized Debtors*" means Reorganized Propco and Reorganized HoldCo together, (each individually a "Reorganized Debtor"), and as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including Reorganized PropCo.

98.    "*Reorganized HoldCo*" means a new limited liability company that may be formed or caused to be formed by the Debtors, with the consent of the Lenders, not to be unreasonably withheld, conditioned, or delayed, to, among other things, hold 100% of the equity in Reorganized PropCo, and issue the New Units to be distributed or sold pursuant to the Plan.

99.    "*Reorganized PropCo*" means a new limited liability company that may be formed or caused to be formed by the Debtors, with the consent of the Lenders, not to be unreasonably withheld, conditioned, or delayed, to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of PropCo.

100.    "*Representatives*" means, with regard to an Entity, current and former officers, directors, members (including *ex officio* members), managers, employees, partners, advisors, attorneys, professionals, accountants, investment bankers, investment advisors, actuaries, Affiliates, financial advisors, consultants, agents, and other representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such).

101.    "*Restructuring Transactions*" means the transactions described in Article V.B of this Plan.

102.    "*Retained Causes of Action*" means Causes of Action that are not waived, relinquished, exculpated, released, compromised, or settled pursuant to this Plan or a Bankruptcy Court order that are identified as retained by the Reorganized Debtors in the Plan Supplement. For the avoidance of doubt, claims by the Debtors against the Lenders, if any, are not Retained Causes of Action and shall be waived or released as part of this Plan.

103.    "*Retained Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (ii) an order entered by the Bankruptcy Court authorizing such retention, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

104.    "*Secured Claim*" means, when referring to a Claim, a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount

subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim.

105.    *"Secured Tax Claim"* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

106.    *"Securities Act"* means the Securities Act of 1933, as now in effect or hereafter amended, or any regulations promulgated thereunder.

107.    *"Sole Manager"* means, where applicable, the only manager appointed to govern one or more of the Reorganized Debtors.

108.    *"Tax Code"* means the U.S. Internal Revenue Code of 1986, as amended.

109.    *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

110.    *"Unimpaired"* means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not Impaired.

111.    *"United States Trustee"* means the United States Trustee for Region 2.

112.    *"Voting Deadline"* means the date and time set forth in the Disclosure Statement Order by which votes to accept or reject the Plan, as applicable, must be actually received by the Notice and Claims Agent.

113.    *"Voting Record Date"* means the date established as the voting record date pursuant to the Disclosure Statement Order.

B.    *Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, of this Plan; (e) the words ''herein,'' ''hereof,'' and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) any effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; and (m) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  References to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

3.      All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

4.      Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

5.      In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control. In the event of an inconsistency between the Plan and any other documents, schedules or exhibits contained in the Plan Supplement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control (other than with respect to the New Facility Documentation, the terms of which shall control as it relates to the rights and obligations thereunder); *provided* that to the extent of any conflict between the Plan and the Plan Supplement, including with respect to the New Facility Documentation, the Plan shall control.

## Article II.

## BACKGROUND AND DISCLOSURES

On the Initial Petition Date, Development filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code initiating this Chapter 11 Case. After the Initial Petition Date, PropCo commenced its own chapter 11 case. At all relevant times, the Debtors have remained in possession of their assets and management of their business as a debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

A.      Company Background and Events Precipitating the Chapter 11 Filing

1.      The Debtor's History

The Property is, at present, a partially re-developed building near the Highline section of midtown Manhattan at 435-437 19th Street, New York, New York. The Debtor was founded as a special purpose vehicle for the sole purpose of acquiring and developing the Property.  The Project contemplates construction of high end residential condominiums, with a full "sell-out price" of approximately $60 million or more.

3.      The Debtor's Pre-Petition Capital Structure

In February 2018, the Debtor refinanced its existing loans to raise additional capital for the Project. As part of the refinancing, Development took a $4 million mezzanine loan (the "Mezzanine Loan") with Churchill to assist in paying Project development and construction costs. The entire $4 million under the Mezzanine Loan was funded at closing, on or about February 20, 2018.

Simultaneously, PropCo and Churchill entered into three additional loan agreements (the "Additional Project Loans") for loans totaling up to another approximately $36 million:

- a loan in the principal amount of $23,364,358.18, made pursuant to that certain Acquisition Loan and Security Agreement, dated as of February 20, 2018,

- a loan in the maximum principal amount of up to $11,870,641.82 to be funded upon the terms and subject to the conditions of that certain Building Loan and Security Agreement, dated as of February 20, 2018, by and between Mortgage Borrower, Lenders and Agent, and

- a loan in the maximum principal amount of up to $765,000.00 (the "Project Loan") to be funded upon the terms and subject to the conditions of that certain Project Loan and Security Agreement, dated as of February 20, 2018, by and between Mortgage Borrower, Lenders and Agent (the

"Project Loan Agreement", and together with the Acquisition Loan Agreement and the Building Loan Agreement, the "Loan Agreement")

The parties contemplated that the Debtor's principal would, either by himself or through a round of investors, inject a minimum of $1.6 million in equity into the Project to insure that the Debtor had sufficient funding to complete construction.

As of the Petition Date, Churchill asserts accrued but unpaid interest due and owing on account of the Loans was $31,587,345.03. Churchill asserts it is owed an additional $9,734,474.01 on account of unpaid fees, expenses, and protective advances. As such, as of the Petition Date, Churchill asserts it was owed $41,321,819.04.

Each of the Loans was properly secured by a recorded mortgage on the Property as well as by UCC filings that encompassed all of the Debtor's personalty.

4.        Events Leading to Bankruptcy

This is a single-asset real estate (SARE) case. The project stagnated and remains incomplete. In late 2018, Churchill learned of certain alleged discrepancies and irregularities with the Debtor's projected use of funds. These discrepancies and irregularities lead to Churchill issuing a notice of default and seeking to foreclose on the Project.

In furtherance thereof, on or around August 28, 2018, Churchill issued a notice of disposition of collateral and set a date for a foreclosure sale of Development's interest in PropCo. On the eve of the scheduled sale, Development filed for chapter 11 commencing this case.

While the Debtor and Churchill worked in good faith to attempt to restructure the Loans, the parties were unable to come to terms.

B.        Significant Events in the Chapter 11 Case

1.        Trustee Motion

Early in this case, Churchill filed a motion seeking the appointment of a chapter 11 trustee (the "Trustee Motion"). The Debtor opposed the Trustee Motion. The Trustee Motion was later joined by a group of the Debtors' equity holders. Immediately before the hearing on the Trustee Motion, Debtor and Churchill reached an agreement whereby, among other things, Getzler Henrich would be appointed as responsible officer for the Debtors in place of Jason Lee to minimize ongoing disputes over the future developments.

As part of this process, the parties also reached a global deal on a proposed plan of reorganization, the substance of which is contained in this Plan.

4.        The Claims Process and Bar Date

a.        Section 341 Meeting of Creditors.

On July 18, 2019, the U.S. Trustee held the meeting of Creditors in this Case pursuant to section 341(a) of the Bankruptcy Code.

b.        Debtor's Schedules and Statements

The Debtor filed its Schedules and Statement of Financial Affairs with the Bankruptcy Court on April 24, 2019.

c.        Bar Dates

The deadline established by the Bankruptcy Court for non-governmental entities to file proofs of claim, and the deadline established by the Bankruptcy Court for governmental entities to file proofs of claims has not been established by the Bankruptcy Court.

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to holders of Claims and Equity Interests. The Debtor does not offer an opinion as to any federal, state, local, or other tax consequences to holders of Claims and Equity Interests as a result of the confirmation of the Combined Plan and Disclosure Statement. All holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local, and foreign tax consequences of the Combined Plan and Disclosure Statement. The Combined Plan and Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor, Equity Interest holder, or other party in interest.

D.    Alternate Plan

If the Combined Plan and Disclosure Statement is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan. The additional costs, including, among other amounts, additional Professional fees or asserted substantial contribution claims, all of which would constitute Administrative Expense Claims (subject to allowance), however, may be so significant that one or more parties in interest could request that the Case be converted to chapter 7. Accordingly, the Debtor believes that the Combined Plan and Disclosure Statement enables Creditors to realize the best return under the circumstances.

E.    Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an Impaired Claim or Equity Interest either (a) accept the Combined Plan and Disclosure Statement or (b) receive or retain under the Combined Plan and Disclosure Statement property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

Here, the value of any Distributions if the Debtor's Case was converted to a case under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Combined Plan and Disclosure Statement. This is because the Property is likely undersecured (i.e., its value is less than the mortgage debt and conversion of the Case to a chapter 7 case would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new Professionals, and would lead to a sale of the Property in its current state at a depressed price.

Churchill is only willing to fund the Plan under this Combined Plan and Disclosure Statement, and therefore there is the potential that at auction there will be no funds available for either administrative or Unsecured Creditors. As a result, in the absence of this Plan, the Debtor believes the estate would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than it would if the Combined Plan and Disclosure Statement is confirmed, and therefore holders of Claims in all impaired Classes will recover less than in the hypothetical chapter 7 case. Accordingly, the Debtor believes the "best interest" test of Bankruptcy Code section 1129 is satisfied.

F.    Certain Risk Factors Considered

Holders of Claims and Equity Interests should read and consider carefully the risk factors below, as well as the other information set forth in the Combined Plan and Disclosure Statement, the documents delivered together with the Combined Plan and Disclosure Statement, and the documents referred to or incorporated by reference in the Combined Plan and Disclosure Statement, before voting to accept or reject the Combined Plan and Disclosure Statement. These factors should not be regarded as constituting the only risks present in connection with the Combined Plan and Disclosure Statement and its implementation.

1.    Risk Factors that May Affect the Debtor's Ability to Consummate the Combined Plan and Disclosure Statement

a.    Debtor May Not Be Able to Secure Confirmation of the Combined Plan and Disclosure Statement

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as set forth below, the Debtor believes the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

b.    Delays or Non-Occurrence of Confirmation or of the Effective Date

Although the Debtor believes the Effective Date will occur and should occur fourteen (14) days after the Confirmation Date that is a Business Day there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur. Any delay in confirmation and effectiveness of the Combined Plan and Disclosure Statement could result in, among other things, increased Administrative Expense Claims and Professional Fee Claims

       c.              Parties May Object to the Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes the classification of Claims and Equity Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

       d.              Risk Factors that May Affect Distributions Under the Combined Plan and Disclosure Statement

The estimates of Allowed Claims and recoveries for holders of Allowed Claims set forth in the Combined Plan and Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary significantly from the estimated Claims contained in the Combined Plan and Disclosure Statement. Moreover, the Debtor cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the recoveries to holders of Allowed Claims under the Combined Plan and Disclosure Statement.

**Article III.**

**ADMINISTRATIVE CLAIMS,
PRIORITY TAX CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article IV of this Plan.

*A.*     *Administrative Claims*

       1.         <u>General Administrative Claims</u>

Unless otherwise agreed to by the holder of an Allowed General Administrative Claim and the applicable Debtor(s) or the Reorganized Debtor(s), as applicable, to the extent a General Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each holder of an Allowed General Administrative Claim will receive in full and final satisfaction of its Allowed General Administrative Claim an amount of Cash equal to the unpaid portion of such Allowed General Administrative Claim in Cash:  (a) if such General Administrative Claim is Allowed on or prior to the Effective Date, no later than 30 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such General Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such General Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such General Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed General Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed General Administrative Claim, without any further action by the holder of such Allowed General Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the holder of such Allowed General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

14

2.    <u>Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims must be filed no later than the first Business Day that is 30 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

3.    <u>Administrative Claims Bar Date</u>

All requests for payment of an Administrative Claim (other than Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date; *provided* that all fees and charges assessed against the Estates under 28 U.S.C. § 1930 and other Administrative Claims subject to section 503(b)(1)(D) of the Bankruptcy Code shall not be subject to the Administrative Claims Bar Date. If a Holder of an Administrative Claim (other than Professional Fee Claims) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtors, their Estates, or the Reorganized Debtors, and such Administrative Claim shall be deemed compromised, settled, and released as of the Effective Date.

The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors or the Reorganized Debtors, as applicable, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

B.    *Priority Tax Claims*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

C.    *United States Trustee Statutory Fees*

The Debtors and the Reorganized Debtors, as applicable, shall pay all United States Trustee quarterly fees under 28 U.S.C § 1930(a)(6), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' or Reorganized Debtors' business, for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

## Article IV.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.G hereof.[1] Except for the Claims addressed in Article III above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in Article III of this Plan.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 5 | Equity Interests in Development | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

Except to the extent that the Debtors and a Holder of an Allowed Claim or Allowed Interest, as applicable, agree to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter, or, if payment is not due, in accordance with its terms in the ordinary course.

---

[1]    The Debtors reserve the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

1.   *Class 1 — Other Priority Claims*

   a.   *Classification*: Class 1 consists of all Other Priority Claims.

   b.   *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Other Priority Claim, each Holder of such Allowed Other Priority Claim shall:

   (i)   be paid in full in Cash on or as soon as reasonably practicable after (A) the Effective Date, (B) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (C) such other date as may be ordered by the Bankruptcy Court; or

   (ii)   receive such other recovery as is necessary to satisfy section 1129 of the Bankruptcy Code.

   c.   *Voting*: Class 1, consisting of all Other Priority Claims, is Unimpaired and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.   *Class 2 — Other Secured Claims*

   a.   *Classification*: Class 2 consists of all Other Secured Claims.

   b.   *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each allowed Other Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) other treatment rendering such claim unimpaired.

   c.   *Voting*: Class 2, consisting of all Other Secured Claims, is Unimpaired and Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.   *Class 3 —Prepetition Loan Secured Claims*

   a.   *Classification*:  Class 3 consists of Prepetition Term Loan Secured Claims.

   b.   *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Term Loan Secured Claim agrees to less favorable treatment, on or as soon as is reasonably practicable after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each allowed Prepetition Loan Claim, each holder thereof (or a designated affiliate) shall receive (i) its pro rata share of the New Mortgage Loan and the New Mezzanine Loan, and (ii) its Pro Rata Share of 100% of the New Class A Units in Reorganized HoldCo.

   c.   *Voting*: Class 3, consisting of Prepetition Term Loan Secured Claims, is Impaired and Holders of Allowed Prepetition Loan Claims are entitled to vote to accept or reject the Plan.

4.   *Class 4 — General Unsecured Claims*

   a.   *Classification*: Class 4 consists of all General Unsecured Claims.

    b.    *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or as soon as is reasonably practicable after the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed General Unsecured Claim, each Holder of such Allowed General Unsecured Claim shall receive payment in full in cash on the Effective Date.

    c.    *Voting*:  Class 4, consisting of all General Unsecured Claims, is Unimpaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.    *Class 5 — Equity Interests in Development*

    a.    *Classification*: Class 5 consists of all Equity Interests in Development.

    b.    *Treatment*:  On the Effective Date, all Equity Interests in Development shall be cancelled and each Class A Holder in Development shall receive its Pro Rata Share of (i) 100% of the New Class B Units in Reorganized HoldCo and (ii) the interests in the Litigation Trust.

    c.    *Voting*:  Class 5, consisting of all Equity Interests in Development, is Impaired and Holders of Allowed Equity Interests in Development are conclusively presumed to have rejected the Plan.  Therefore, Holders of Allowed Equity Interests in Development are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

    Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    *Acceptance or Rejection of the Plan*

1.    <u>Presumed Acceptance of Plan</u>

    Holders of Claims in Classes 1, 2 and 4 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 1, 2 and 4 are not entitled to vote on the Plan, and the votes of such Holders shall not be solicited.

2.    <u>Voting Classes</u>

    Each Holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject the Plan.

3.    <u>Deemed Rejection of the Plan</u>

    Holders of Interests in Class 5, and certain Holders of Claims in Class 5 are Impaired and shall receive no distributions under the Plan on account of their Interests or Claims (as applicable) and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Interests in Class 5, and certain Holders of Claims in Class 3 are not entitled to vote on the Plan, and the votes of such Holders shall not be solicited.

4.    <u>Controversy Concerning Impairment</u>

    If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

E.    *Nonconsensual Confirmation*

    Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the

Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XIII.A of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto. All Claims and Interests of Jason Lee, Six Sigma 19 Highline LLC, and each of their Affiliates, subsidiaries and transferees, including any claims for indemnification, reimbursement or subrogation, shall be considered Disputed Claims under the Plan and shall be subordinated in right of payment to all Holders of Allowed Claims and Interests in the Chapter 11 Cases.

G.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**Article V.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *Sources for Plan Distributions and Transfers of Funds Among Debtors*

The Debtors shall fund distributions under the Plan, with the proceeds of the New Project Loan in an amount up to $20,000,000. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors. The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement (including the New Facility Documentation and the New Organizational Documents), shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the Sole Manager of the applicable Reorganized Debtor deems appropriate.

B.    *Restructuring Transactions*

1.    New Capital Structure

On the Effective Date, Reorganized HoldCo will receive 100% of the equity interests in Reorganized PropCo. The Property will vest in Reorganized PropCo free and clear of any pre-existing liens claims and interests except as provided for herein.

Reorganized HoldCo will become the borrower under the New Mezzanine Loan. Reorganized PropCo will become the borrower under the New Mortgage Loan. The Lenders will agree to assign their mortgages in order to avoid any mortgage transfer tax.

As set forth in the New Facility Documents, each of the New Mortgage Loan and New Mezzanine Loan shall bear interest at 13.7% per annum until the date that is twenty one (21) months after the Effective Date. From the date that is twenty one (21) months after the Effective Date until the date that is thirty (30) months after the Effective Date, each of the New Mortgage Loan and New Mezzanine Loan shall bear interest at 9% per annum. From the date that is thirty (30) months after the Effective Date through the Maturity Date of the New Mortgage Loan and the New Mezzanine Loan, each of the New Mortgage Loan and the New Mezzanine Loan shall bear interest at 7% per annum.

Completion of the Project will be financed by the New Project Loan. As set forth in more detail in the New Project Loan Agreement, the New Project Loan shall bear interest at a rate of 20% per annum. The Lenders will permit Investors to participate in the New Project Loan as set forth therein. Lenders' fees and costs will be advanced through this new facility.

From and after completion of the Project as determined by the Lenders, the Reorganized HoldCo Operating Agreement will provide for distribution of Proceeds as follows:

First, to repay principal due and owing on the New Mortgage Loan and the New Mezzanine Loan;

Second, to repay accrued and unpaid interest on the New Mortgage Loan and New Mezzanine Loan;

Third, $250,000 will be paid, pro rata, to holders of New Class B Units in Reorganized HoldCo;

Fourth, to repay any principal due and owing on the New Project Loan;

Fifth, to repay any accrued and unpaid interest on the New Project Loan;

Sixth, to repay Lenders on account of any amounts advanced to fund these Chapter 11 cases; and

Seventh, the remainder, if any, will be split 60% to holders of New Class A Units in Reorganized Holdco and 40% to holders of New Class B Units in Reorganized Holdco.

The holders of New Class A Units, in consultation with the holders of New Class B Units, will have the right to name the new Sole Manager for Reorganized HoldCo. The Sole Manager will name the project manager and construction manager for the Project.

The holders of New Class A Units will have the right to name the new Sole Manager for Reorganized HoldCo. The Sole Manager will name the project manager and construction manager for the Project.

The Sole Manager will provide monthly updates to the holders of New Class A Units and holders of New Class B Units, and will consult holders of New Class A Units and holders of New Class B Units on all material decisions affecting budget, pricing or timing of completion. The Sole Manager agrees to consult with the holders of the New Class B Units and keep them reasonably informed regarding the proposed condo unit pricing as determined solely by the Sole Manager prior to offering the units for sale. From time to time until all units are sold, Sole Manager will have authority, in its sole and absolute discretion, to lower or other adjust the sales price(s) and terms and conditions of sale for any units.

2.    Restructuring Transactions

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors, subject to the consent of the Lenders, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of formation or incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Reorganized Debtors determine are necessary or appropriate.

C.    *Litigation Trust*

1.    <u>Creation of Litigation Trust</u>

On the Effective Date, the Litigation Trust shall be created as the vehicle for implementation of the Plan. A Litigation Trust Agreement, in form and substance reasonably acceptable to a majority of holders of New Class B Units, shall be executed by the Reorganized Debtors and the Litigation Trustee. All right, title, and interest in the Retained Causes of Action shall be transferred, assigned, and delivered to the Litigation Trust, free of all Claims, Liens, and Interests, to be managed by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement for the sole purposes of consummating and carrying out the Plan. All other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein.

The Litigation Trustee shall manage the prosecution of Retained Causes of Action, and after deducting costs and expenses of litigation, the Litigation Trustee shall distribute the proceeds of such claims in accordance with the terms of the Plan and Litigation Trust Agreement.

The Litigation Trust shall be funded by the Litigation Trust Advance. As set forth in the Litigation Trust Agreement, fifty percent (50%) of all proceeds recovered by the Litigation Trust, after deducting reasonable attorneys' fees and costs, shall be paid to the Lenders until the Litigation Trust Advance is repaid.

The Litigation Trustee shall have the powers, duties, and obligations set forth in the Plan and the Litigation Trust Agreement. The costs and expenses incurred by the Litigation Trustee on and after the Effective Date shall be paid from the assets of the trust. Upon entry of the Final Order closing these Chapter 11 Cases and as otherwise provided in the Litigation Trust Agreement, the Litigation Trust shall be terminated and dissolved without further action by the Litigation Trustee. In connection with the above-described assets, any and all rights, claims, and causes of action, any attorney-client or similar privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust shall vest with the Litigation Trustee and its representatives.

The Litigation Trustee shall be compensated as set forth in the Litigation Trust Agreement and shall not be required to file a fee application or obtain any approval of the Bankruptcy Court to receive compensation. Subject to the provisions of the Litigation Trust Agreement, the Litigation Trustee shall be entitled to hire and engage such professionals as it deems appropriate to assist in carrying out the duties of the Litigation Trust, with the reasonable fees and expenses of such professionals to be paid from the Litigation Trust's assets. The Litigation Trustee may pay from its assets all reasonable fees and expenses incurred in connection with the duties and actions of the Litigation Trustee, including, but not limited to, fees and expenses of the Litigation Trustee's professionals, insurance, taxes, and other expenses arising in the ordinary course of business in maintaining, liquidating, disposing of, and the distribution of its assets and compensation to the Litigation Trustee. The Litigation Trustee may pay all such reasonable fees and expenses without Bankruptcy Court approval.

The Litigation Trust will terminate no later than the second (2nd) anniversary of the Effective Date; provided, however, that upon motion of the Litigation Trustee or a party in interest, the Bankruptcy Court may extend the term of the Litigation Trust for a fixed period if it is necessary or appropriate to facilitate or complete the liquidation and distribution of its assets. Additional extensions can be obtained so long as Bankruptcy Court approval is obtained; provided, however, that the aggregate of all such extensions shall not exceed five (5) years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a grantor trust for federal income tax purposes.

The Litigation Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

For federal income tax purposes, all parties including, without limitation, the Debtors, the Litigation Trustee and the beneficiaries of the Litigation Trust, shall treat the transfer of assets to the Litigation Trust, in accordance with the terms of the Plan and the Litigation Trust Agreement, as a transfer to the holders of Equity Interests, followed by a transfer by such Investors to the Litigation Trust, and the beneficiaries of the Litigation Trust shall be treated as the grantors and owners thereof.

21

The beneficial interests in the Litigation Trust shall not be certificated and shall not be transferable.

2.    Responsibilities of the Liquidating Trustee

As of the Effective Date, the Litigation Trustee, on behalf of its beneficiaries, the Reorganized Debtors, or the Bankruptcy Estates, as applicable, shall be responsible for: (i) filing, prosecuting, compromising, and settling Retained Causes of Action; (ii) making distributions of the proceeds of any such claims, (iii) complying with, enforcing, and carrying out the terms of the Plan and Litigation Trust Agreement; and (iv) making and filing all tax returns for the Litigation Trust.

The Litigation Trustee shall have sole authority to pursue, settle, or otherwise resolve or abandon any Retained Causes of Action, to hire and pay professional fees and expenses of counsel and other advisors, and to take such other actions as shall be necessary to implement the Plan, or as otherwise provided under the Litigation Trust Agreement.

D.    *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval. After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. After the Effective Date, one or more of the Reorganized Debtors may be disposed of, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances and free and clear of General Unsecured Claims. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.    *Cancellation of Agreements and Equity Interests*

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan (if not made on the Effective Date), except as otherwise specifically provided for in the Plan: (1) subject to the satisfaction of Prepetition Loan Claims in accordance with Article III of this Plan, the obligations of the Debtors under the Prepetition Loan Agreements, and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically

reinstated or entered into pursuant to the Plan) shall be released and discharged.  Class B Holders in Development will receive nothing under the Plan.

G.    *Approval New Facility Documentation*

Confirmation of the Plan shall be deemed to constitute approval of the New Investments and the New Facility Documentation (including all transactions contemplated thereby, and all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities and expenses provided for therein), and authorization for the Reorganized Debtors to enter into and perform their obligations under the New Facility Documentation (as applicable) and such other documents as may be reasonably required or appropriate, in each case, in accordance therewith.

On the Effective Date, the New Facility Documentation shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended to the Reorganized Debtors pursuant to the New Facility Documentation are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

On the Effective Date, all of the Liens and security interests to be granted by the Reorganized Debtors in accordance with the New Facility Documentation (a) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Facility Documentation (as applicable), (b) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Facility Documentation, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

H.    *Reorganized Debtors' Equity Interests*

1.    <u>New Units</u>

On the Effective Date, Reorganized HoldCo shall issue or cause to be issued or reserve for issuance all of the New Class A Units and New Class B Units issued or issuable in accordance with the terms herein.  The issuance of the New Units by Reorganized HoldCo for distribution pursuant to the Plan is authorized without the need for further corporate or limited liability company action and without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  All of the New Units issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  Other than as contemplated through the issuance of the New Units there shall exist on the Effective Date, no other equity securities, warrants, options, or other agreements to acquire any equity interest in Reorganized HoldCo.

2.    <u>Operating Agreement</u>

On the Effective Date, Reorganized HoldCo and the Lenders and/or their designated affiliates shall (or be deemed to) enter into the Operating Agreement with respect to the New Units in substantially the form included in the Plan Supplement or in such other form as may be acceptable to Lenders.  The Operating Agreement, if any, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Units shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized HoldCo.

From and after the Effective Date, the Operating Agreement shall be amended as set forth therein and may be amended or modified without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.      *Exemption from Registration Requirements*

The offering, issuance, and distribution of any New Units pursuant to the Plan shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act to the maximum extent permitted thereunder pursuant to section 1145 of the Bankruptcy Code and any other applicable state and federal law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution or sale of securities, and the Confirmation Order shall so provide.  Except as otherwise provided in the Plan or the governing certificates or instruments, any and all New Units issued under the Plan will be freely tradable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments, including any such restrictions in the Operating Agreement, if any; (b) the restrictions, if any, on the transferability of such securities and instruments; and (c) any other applicable regulatory approval.

J.      *Organizational Documents*

The Reorganized Debtors shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan or as otherwise reasonably requested by Lenders.  Without limiting the generality of the foregoing, as of the Effective Date, Reorganized HoldCo shall be governed by the Certificate of Formation and the Operating Agreement.  The New Organizational Documents will comply with section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date and subject to Lenders' consent, the Reorganized Debtors, including the Reorganized HoldCo, may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and their respective New Organizational Documents.

K.      *Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the transfer of the Property from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any stamp tax or similar tax, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

L.      *Directors and Officers of the Reorganized Debtors*

To the extent known, the identity of the new Sole Manager of the Reorganized Debtors will be disclosed in the Plan Supplement or prior to the Confirmation Hearing.  Except to the extent that the Sole Manager of a Debtor continues to serve as a director, manager or Sole Manager of such Reorganized Debtor on the Effective Date, the Sole Manager of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director, manager, Sole Manager will be deemed to have resigned or shall otherwise cease to be the sole manager of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each Sole Manager and officers of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Reorganized Debtor and may be replaced or removed in accordance with such New Organizational Documents.

M.      *Preservation of Rights of Action*

The Retained Causes of Action are expressly preserved including, without limitation, potential causes of action, claims and all equitable and legal remedies against the Debtors, Six Sigma 19 Highline LLC, Jason Lee and/or their subsidiaries, affiliates and transferees, including by way of example, (i) claims for breach of fiduciary duty, negligence and fraud, and (ii) insurance claims and derivative claims for injury to the Debtors from wrongs committed by the Debtors' officers and/or managers arising from waste, negligence, fraud, mismanagement or misappropriation of corporate assets.

N.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed implemented, authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Reorganized Debtors, or any other Entity, including, without limitation:  (1) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (2) selection of the directors, managers, and officers for the Reorganized Debtors; (3) the execution of and entry into the New Facility Documentation, and the New Organizational Documents; and (4) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the organizational structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

On or (as applicable) prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors including, without limitation, (1) the New Facility Documentation, and the New Organizational Documents; (2) any and all other agreements, documents, securities, and instruments relating to the foregoing; and (3) such other documents, agreements, and instruments as may be reasonably requested by Lenders.  The authorizations and approvals contemplated by this Article V.N shall be effective notwithstanding any requirements under non-bankruptcy law.

O.      *Effectuating Documents; Further Transactions*

Prior to, on, and after the Effective Date, the Debtors and Reorganized Debtors and their directors, managers, officers, and authorized persons are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the New Facility Documentation, the New Organizational Documents, and any securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**Article VI.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES**

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, in the Plan, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected by the Debtors or the Reorganized Debtors, as applicable, as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code *except* any Executory Contract or Unexpired Lease (1) identified on the Assumed Executory Contract/Unexpired Lease List as an Executory Contract or Unexpired Lease designated for assumption, (2) that is the subject of a separate motion or notice to assume (including a motion or notice pursuant to which the requested effective date of such assumption is after the Effective Date) filed by the Debtors and pending as of the Confirmation Hearing, (3) that has been previously assumed pursuant to a Bankruptcy Court order or the Assumption/Rejection Procedures, or (4) that previously expired or terminated pursuant to its own terms.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan and the Plan Supplement, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.  Subject to section 365(c) of the Bankruptcy Code, each Executory Contract and Unexpired Lease assumed pursuant to the Plan or a Bankruptcy Court order and not assigned to a third party on or prior to the Effective Date, shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been validly modified by order of the Bankruptcy Court and notwithstanding any provision in any such assumed Executory Contract or Unexpired Lease that restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired lease (including any "change of control" provision), and, therefore, consummation of the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Notwithstanding anything to the contrary in the Plan, except as set forth in the Restructuring Support Agreement, the Debtors reserve the right to alter, amend, modify, or supplement the listing of Executory Contracts and Unexpired Leases identified on the Assumed Executory Contract/Unexpired Lease List and the Rejected Executory Contract/Unexpired Lease List prior to the Effective Date, or such later date as provided in Article VI.E below, on notice to the non-Debtor Entities affected by such alteration, amendment, modification, or supplement (and upon such Entities' counsel, if known) to be filed and served no less than five days prior to the effective date of the assumption of the affected Executory Contracts and Unexpired Leases.

B.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.  No later than the Plan Supplement Filing Date, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, the Debtors shall provide for notices of proposed assumption and proposed Cure Cost (and, to the extent the Debtors seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee and provide adequate assurance of future performance by such assignee within the meaning of section 365 of the Bankruptcy Code) to be filed and served upon applicable contract and lease counterparties (and upon such Entities' counsel, if known), together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or related Cure Cost must be filed, served, and actually received by the Debtors before the objection deadline provided in the notice of proposed assumption and Cure Cost, which deadline shall be no less than 7 business days after the date on which the applicable notice of proposed assumption and proposed Cure Cost is filed and served.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Cost will be deemed to have assented to such assumption or Cure Cost. Any objection to a proposed assumption, assumption and assignment, or Cure Cost will be scheduled to be heard by the Bankruptcy Court at the Reorganized Debtors' first scheduled omnibus hearing after which such objection is timely filed. In the event of a dispute regarding (1) the amount of any Cure Cost, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (3) any other matter pertaining to assumption and/or assignment, then such Cure Costs shall be paid following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon by the Debtors or the Reorganized Debtors and the counterparty to such Executory Contract or Unexpired Lease; *provided* that the Debtors may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, the Debtors reserve the right to either reject, or nullify the assumption of, any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost under an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Cost, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the Cure Cost paid, shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors will continue to honor all post-petition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms, regardless of whether such obligations are listed as a Cure Cost, and whether such obligations accrued prior to or after the Effective Date, and neither the payment of cure nor entry of the Confirmation Order shall be deemed to release the Debtors or the Reorganized Debtors from such obligations.

C.    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Notice and Claims Agent within twenty-one (21) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. **Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts and Unexpired Leases that are not timely filed shall be deemed disallowed.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article IV.B.4 of this Plan.

D.    *Contracts and Leases Entered into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any Assumed Executory Contracts and Unexpired Leases) that have not been rejected as of the Confirmation Date will survive and remain unaffected by entry of the Confirmation Order.

E.    *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, nor the Debtors' delivery of a notice of proposed assumption and proposed cure amount to applicable contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there

is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**Article VII.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Distribution on Account of Claims and Interests Allowed as of the Effective Date*

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date shall be made on the Initial Distribution Date; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (2) in accordance with Article III.B herein, Allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.  In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

B.      *Distributions on Account of Claims and Interests Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim; *provided* that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article XI.A of this Plan and paid on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

C.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Initial Distribution Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Initial Distribution Date, on the date that such claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that any Disputed Claims

exist, distributions on account of such Disputed Claims shall be made pursuant to Article VII.B and Article VIII of this Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.    *Delivery of Distributions*

    1.    <u>Record Date for Distributions</u>

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

    2.    <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

    3.    <u>Distributions by Distribution Agents</u>

The Debtors and the Reorganized Debtors, as applicable, shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder. To the extent the Debtors and the Reorganized Debtors, as applicable, determine to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain a surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors or the Reorganized Debtors, as applicable.

The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents. The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable. In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

    4.    <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, the Reorganized Debtors and the Distribution Agents shall not be required to make distributions or payments of less than $50 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or fractional share of New Units under the Plan would otherwise be called for, the actual

payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Units (up or down), with half dollars and half shares of New Units or less being rounded down.

5.    Undeliverable Distributions

a.    Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Article VII.D.5.b of this Plan, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

b.    Failure to Claim Undeliverable Distributions

No later than 60 days after an initial distribution has been made to each Class entitled to receive a distribution under the Plan, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within 60 days after the filing of the list of Holders of undeliverable distributions shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment laws, all such distributions shall revert to the Reorganized Debtors. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

c.    Failure to Present Checks

Checks issued by the Reorganized Debtors (or their Distribution Agent) on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment laws, all such distributions shall revert to the Reorganized Debtors. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

E.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.      *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Equity Interest shall be deemed to have surrendered such certificate or instrument to the Reorganized Debtors.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

G.      *Claims Paid or Payable by Third Parties.*

1.      Claims Payable by Insurance

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.

2.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**Article VIII.**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

A.      *Allowance of Claims and Interests*

After the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

B.      *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, and subject to a party in interest's right to object to a Claim or Interest under section 502(a), on and after the Effective Date, the Reorganized Debtors shall have the sole authority:  (1) to file, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim or Interest pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012 for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.    *Adjustment to Claims and Interests Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted on the Claims Register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline, as such may be extended pursuant to the terms of the Plan.

F.    *Disallowance of Certain Claims*

In accordance with the Settlement, neither the Debtors nor the Reorganized Debtors nor any other party on their behalf may pursue an Avoidance Action or seek disallowance of a claim based upon Section 502(d) of the Bankruptcy Code.

All Proofs of Claim filed on account of an indemnification obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G.    *Amendments to Proofs of Claim*

On or after the Effective Date, a Proof of Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Proof of Claim or Interest filed shall be deemed disallowed in full and expunged without any further action by the Debtors or Reorganized Debtors (as applicable) or notice to the Bankruptcy Court or any other Entity.

## Article IX.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

*A.*    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Confirmation Order shall have been entered and shall be in full force and effect no later than [---].

2.    The Confirmation Order shall be a Final Order no later than [---].

3.    The New Investments shall have been consummated, or shall substantially contemporaneously with the Effective Date be consummated, in all material respects in accordance with the New Facility Documentation, respectively.

4.    All documents and agreements necessary to implement the Plan shall have been executed and tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

5.    All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

6.    All material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained.

*B.*    *Waiver of Conditions*

The Debtors or the Reorganized Debtors, as applicable, may waive the above at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.  The failure of the Debtors or Reorganized Debtors, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of such rights or any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

*C.*    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

*D.*    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## Article X.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order

confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) Lenders and each Debtor has proposed the Plan in good faith, (iv) each Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Lenders and each Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

A.      *Best Interest Test.*

        The so-called "best interest" test requires that each impaired Creditor and impaired Equity Interest either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code. Accordingly, if an Impaired Class does not unanimously vote to accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the recovery that each such Class member would receive if the Debtors were liquidated under chapter 7. The Lenders and Each Debtor believe that the value of the distributions provided to Holders of Allowed Claims and Interests under the Plan would be the same or greater than under a hypothetical chapter 7 liquidation. Accordingly, The Lenders and Each Debtor believe that the Plan is in the best interests of creditors

B.      *Liquidation Analysis.*

        The Plan provides for payment in full to each class of Allowed Claims. Accordingly, the each Debtor believes that the Plan provides Creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.

C.      *Feasibility.*

        For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of each Debtor unless such liquidation is set forth in the Plan. Each Debtor believes that the Plan meets the financial feasibility requirement. Moreover, the Lenders and each Debtor believe that sufficient funds will exist to make all distributions required by the Plan. By virtue of the funding provided for in the Plan, each Debtor will have sufficient monies to cover all development, construction, and carry payments.   This case will not be followed by a liquidation because in the event that each Debtor cannot make payments required under the post-petition loan documents, the Property will revert to the Lenders.  Accordingly, the Lenders and each Debtor believe that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

## Article XI.

## DISCHARGE, INJUNCTION AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Equity Interests; Equity Interests, and Controversies.*

        Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Equity Interests and Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors, the Reorganized Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest is Allowed; or (3) the

Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan. For the avoidance of doubt, nothing in this Article XI.A shall affect the rights of Holders of Claims and Interests to seek to enforce the Plan, including the distributions to which Holders of Allowed Claims and Interests are entitled under the Plan. Notwithstanding any discharge, release or injunctive provisions contained in the Plan, the Litigation Trustee on behalf of the Litigation Trust may nominally name and sue the Debtors (without seeking any recovery from the Debtors or their estates) in connection with pursuing and preserving the Litigation Trust's rights and remedies against third parties pursuant to the Retained Causes of Action.

In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Litigation Trustee may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

**B.**     *Injunction*

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (A) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; OR (B) ARE OTHERWISE DISCHARGED, SATISFIED, STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY DISCHARGED, RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES.**

**C.**     *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

**Article XII.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including establishment of a bar date, related notice, claim objections, allowance, disallowance, estimation and distribution;

9.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10.     Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

15.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.     Enter an order or final decree concluding or closing the Chapter 11 Cases;

18.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the New Facility Documentation, which such disputes shall be adjudicated in accordance with the terms of the New Facility Documentation;

22.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

24.     Enforce all orders previously entered by the Bankruptcy Court and resolve any cases, controversies, suits or disputes that may arise in connection with any entity's rights arising from or obligations incurred in connection with the Plan; and

25.     Hear any other matter not inconsistent with the Bankruptcy Code.

### Article XIII.

### MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

*A.    Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules: (i) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

*B.    Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.        *Revocation of Plan*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the entry of the Confirmation Order and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan with respect to such Debtor or Debtors shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void with respect to such Debtor or Debtors; and (iii) nothing contained in the Plan with respect to such Debtor or Debtors shall: (a) constitute a waiver or release of any claims by or against, or any Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

## Article XIV.

## MISCELLANEOUS PROVISIONS

A.        *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

B.        *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

C.        *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of Title 28 of the U.S. Code shall be paid when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

D.        *Reservation of Rights*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.        *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

F.    *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall also be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| 19 Highline Development LLC<br>55 Maple Ave, Ste 206<br>Rockville Centre, NY 11570-4267 | J. Ted Donovan<br>Goldberg Weprin Finkel Goldstein LLP<br>1501 Broadway, 22nd Floor<br>New York, New York 10036<br>Telephone: (212)-221-5700<br>Fax: (212) 422-6836<br>Email: TDonovan@GWFGlaw.com |
| **United States Trustee** | **Counsel to the Lenders** |
| Serene K. Nakano<br>U.S. Department of Justice<br>U.S. Trustee's Office<br>U.S. Federal Office Building<br>201 Varick St., Room 1006<br>New York, New York 10014<br>Telephone: (212) 510-0500<br>Fax : (212) 668-2255<br>Email: serene.nakano@usdoj.gov | Robert K. Dakis<br>Morrison Cohen LLP<br>909 Third Ave. 27th Floor<br>New York, New York 10022<br>Telephone: (212) 735-8600<br>Fax: (212) 735-8708<br>Email: rdakis@morrisoncohen.com |

After the Effective Date, the Reorganized Debtors have authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

Except as otherwise indicated, on the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to Debtors or Reorganized

Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

J.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above.

K.      *Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      *Conflicts*

To the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the DIP Orders and the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision in the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

N.      *Section 1125(e) Good Faith Compliance*

The Debtors, Reorganized Debtors and the Lenders, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

O.      *Further Assurances*

The Debtors, Reorganized Debtors, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*        *        *        *        *

Respectfully submitted, as of the date first set forth above,

By:
Name: WILLIAM A HENRICH
Title: CHIEF RESTRUCTURING OFFICER

41